IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARCIA K. HAJEK, Individually and as Personal Representative of the Estate of Alan E. Hajek, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | 4:08CV3157 |
| v. | ) ) ) | |
| KUMHO TIRE CO., Inc., a foreign corporation, KUMHO TIRE U.S.A., Inc., a California corporation, and FORD MOTOR COMPANY, a Delaware corporation, | ) ) ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) ) | |

INTRODUCTION

The plaintiffs have filed suit to recover for the death of Alan E. Hajek, and for personal injuries sustained by Marcia K. Hajek arising from an automobile accident allegedly caused by defective tires designed, manufactured, and/or marketed by the defendants. The defendants have moved for an order compelling the plaintiffs to produce the allegedly defective tires and rims for defendants' inspection and nondestructive testing. The defendants also move to compel the plaintiffs to identify all persons who had custody of these tires and rims from the time of the accident to present. Filing No. 76.

The plaintiffs oppose the defendants' motion, arguing that although the defendants are entitled to inspect the tires, the tires are owned by the plaintiffs and must remain in the plaintiffs' custody at all times. The plaintiffs' claim:

(1)     [F]or simple inspection and photographing, the subject tires should remain in Kansas City, where they are being stored;

(2)     Kumho should provide Plaintiff with a detailed protocol for any testing that it proposes and;

(3)     any inspection or testing on the subject tires should be done in the presence of Plaintiff's representatives and should be videotaped to document what was or was not done to the tire and its components.

Filing No. 82, at CM/ECF p. 2.  The plaintiffs further claim identifying everyone who possessed the tires at any time since the accident will, by necessity, require the plaintiffs to disclose their retained experts, and the identity of non-testifying experts is protected from discovery under the work product doctrine.

## STATEMENT OF FACTS

The plaintiffs' initial complaint alleges that "[o]n or about August 17, 2006, while traveling eastbound on I-80 near Brady, Nebraska, the left front tire of [a 2001 Ford F250 Super Duty pickup truck VIN# 1FTNW21F01EB87943] suffered a sudden, unexpected, and catastrophic tread and belt separation that caused the driver to lose control of the subject vehicle, which exited the highway" and collide with the vehicle occupied by the plaintiffs.   Filing No. 1, ¶¶ 8, 11.

Following the accident, Farm Bureau Financial Services retained Packer Engineering, Inc. to perform a forensic examination of the tire and rim that allegedly caused the accident.  James K. Sprague, Ph.D., a mechanical engineer for Packer, issued his investigation report on May 17, 2007.  Filing No. 86-2, at CM/ECF p. 2, ¶ 5.  Dr. Sprague found:

[T]he subject tire disclosed a large damaged region at the 5 0'clock tire position, and my conclusion about this damaged region was that it could be indicative of either road hazard or tire manufacturing issues.  I did not conclude that the tire failed because of a defect in the tire existing from the time of manufacture.

Filing No. 86-2, at CM/ECF p. 2, ¶ 6.

After being examined by Packer Engineering, the tires and rims were ultimately delivered to the custody of plaintiffs' counsel.  Filing No. 78-3, at CM/ECF p. 9, (response to interrogatory no. 28).  How that occurred, and the identity of who may have handled the tires and rims from the time they left the custody of Packer Engineering to present, remains unknown.  The defendants served interrogatories on the plaintiffs and, on April 24, 2009,  received the following response:

INTERROGATORY NO. 29:   State the persons known to have had custody of the tires in question and rims from August 17,2006 to the current date.

**ANSWER**

Randall Edson. Nebraska State Patrol. Farm Bureau Mutual Insurance. Counsel for Plaintiff.  For more details regarding the identify of specific individuals who may have had "custody" of the tires and rims, Plaintiff refers Defendant to the Nebraska State Patrol report and the materials produced by Farm Bureau, at Defendant's request.  Otherwise, to the extent this interrogatory seeks to discover attorney work product, Plaintiff objects.  Plaintiff objects to this interrogatory on the basis that it impermissibly seeks information protected by the attorney work product doctrine. The identity of consultants for Plaintiff who may have examined the tires is currently work product.   If and when that consultant(s) is identified as a retained expert in accordance with Fed.R.Civ.P. 26(a)(2) - which will be done in accordance with any scheduling Order entered by this Court and the Federal Rules of Civil

-3-

Procedure - his or her identity will be revealed to Defendants along with a report of his or her findings.

Filing No. 78-3, at CM/ECF p. 19.

On December 24, 2008, counsel for the Kumho defendants emailed a Tire Inspection Agreement to plaintiffs' counsel. Under the terms of the agreement, Kumho Tire or Ford proposed taking possession of the accident artifacts from plaintiffs' counsel and shipping those artifacts to consultants for the defendants for the purpose of examining, documenting and testing. The proposed agreement stated there would be no destructive testing performed, no solvents or cleaning agents used, no intentional scraping or removing of the tire surface materials, and no alterations to the tires without the written consent of all parties. The proposed agreement stated the defendants intended to complete the inspection and return the tires to plaintiffs' custody within 60 days. Filing No. 78-2, at CM/ECF pp. 6-10; filing no. 78-4, at CM/ECF p. 6-11.

On January 14, 2009, counsel for the Kumho defendants sent a second letter to plaintiffs' counsel which stated:

> I am attaching a copy of correspondence and the tire inspection agreement originally emailed on December 24, 2008. I would appreciate receiving a response as soon as possible so that we are able to move forward with the inspection.

Filing No. 78-4, at CM/ECF p. 13.

On March 4, 2009, defense counsel sent a third letter to plaintiffs' counsel which stated:

> I received notification that three attorneys from Kansas City have filed their applications for admissions pro hac vice in our case. Now that you

-4-

have the out of state attorneys on board, would you have them review
our proposed agreement so that we can have the opportunity to inspect
the tires and rims?

Filing No. 78-4, at CM/ECF p. 21.

Plaintiffs' counsel responded on March 13, 2009, stating they would not sign
the defendants' proposed Tire Inspection Agreement.    Plaintiffs' counsel
acknowledged the defendants are entitled to inspect the tires and rims, but stated any
such  inspection and photographing must occur at the office of plaintiffs' counsel in
Kansas City; anything done to these tires and wheels by the defendants or their
consultants must be done in the presence of and while the evidence remains in the
custody and control of plaintiffs' counsel, and will be videotaped to document what
was or was not done; and should the defendants or their consultants wish to perform
any "tests" on the tires, plaintiffs' counsel would need, in advance, a description of
what tests were proposed, a detailed step-by-step protocol of how the tests would be
performed, and the identity of the person who will be performing the test.  Plaintiffs'
counsel would then review the testing protocols with plaintiffs' consultants and "if
we are convinced that this evidence will not be adversely affected by your proposed
testing, we will be happy to try and get an agreement worked out that will get
defendants the discovery they wish and will satisfy our need to monitor and preserve
this critical evidence."  Filing No. 78-4, at CM/ECF p. 22.

On March 16, 2009, defense counsel rejected plaintiffs' proposed terms,
explaining "[o]ur tire experts need to see the tires and rims at their labs.  The only
testing that might be done would be x-rays and that should not change the integrity
of the materials examined."  Filing No. 78-4, at CM/ECF p. 23.  The parties
exchanged several emails thereafter, but never agreed on the conditions and terms for
permitting the defendants' experts to inspect the tires.  Filing No. 78-4, at CM/ECF
pp. 24-25.

Defense counsel served requests for production, and on April 24, 2009, received the following responses from the plaintiffs:

REQUEST FOR PRODUCTION NO. 35:   For inspection, photographing and nondestructive testing, all tires in question and/or components thereof which you allege were involved in the accident in question, which request is discussed more fully in Exhibit A, the Tire Inspection Agreement.

**RESPONSE**

In accordance with her obligations set forth in Fed.R.Civ.P. 34 (and as has already been offered by counsel for Plaintiff), Plaintiff will make the subject tire(s) available for inspection at a mutually convenient time at the offices of Douthit Frets Rouse Gentile & Rhodes, LLC.  Moreover, with respect to any "testing" proposed by Defendants, if Defendants will submit a proposed "test protocol" to Plaintiff, Plaintiff will work with Defendants in an effort to reach an agreement on a testing protocol.

Filing No. 78-2, at CM/ECF p. 2.

The defendants filed a motion to compel, and in support of their motion, have submitted the affidavit of Joseph L. Grant, a tire analyst hired by the defendants as a consultant for this case.  According to Mr. Grant, "[i]n order to determine the manner in which the subject tire may have failed and the reasons for the failure, it will be necessary to perform a non-destructive forensic examination of the subject tire and its related parts, including the wheel and valve," and "it would be helpful to examine the companion tires and wheels involved in the accident as well."  Filing No. 78-5, at CM/ECF p. 3, ¶ 7.  Mr. Grant is willing to be the defendants' primary consultant, and to receive and retain possession and control over the tire artifacts while Mr. Grant and any other consultants retained by the defendants inspect and test the tires and wheels.  Mr. Grant agrees to ensure compliance with the terms of the defendants' proposed Tire Inspection Agreement, but will not otherwise supervise, control, or

participate in the work by any other consultant.  He will inspect and document the condition of the artifacts when received from and when returned to plaintiffs' counsel.  According to Mr. Grant, a proper, nondestructive forensic examination of the tires and related parts will require special equipment and a humidity and temperature-controlled laboratory facility, a tire-changing machine, a tire spreader, and special lighting and magnifying equipment, and it may require precision gauge and measurement instruments,  macro and close-up photographic equipment, and special x-ray equipment designed specifically for tires.  More than a day may be necessary to perform the testing, and all such contemplated testing is nondestructive. Filing No. 78-5, at CM/ECF pp. 5-7, ¶¶ 13-19.  Mr. Grant's affidavit states performing the necessary testing in the office of plaintiffs' counsel would require shipping the laboratory equipment to and from that office, and would be substantially more expensive and time-consuming than inspecting the tires and wheels at the consultant's fully equipped laboratory.   Filing No. 78-5, at CM/ECF p. 9, ¶¶ 24-26.

In response to defendants' motion to compel, plaintiffs' counsel states:

> At the offices of our law firm, in Kansas City, there are several conference rooms large enough to allow an inspection of the tires to take place.  Many defendants and their counsel in litigation from across the county have conducted inspections, very similar to the one requested in this case in the conference rooms at this office.  The conference room has proper lighting, temperature control and space.  Additionally, counsel owns a tire stand that may be used to help accommodate with the inspection.

Filing No. 83-5, at CM/ECF p. 2.

LEGAL ANALYSIS

The defendants' motion seeks: 1) production of the tires and rims to perform inspection and testing, and 2) a complete answer to defendants' interrogatory requesting the identify of those who had custody of the subject tires and rims from the time of the accident to present.

A.    Production of Tires and Rims.

A party may serve on any other party a request to produce and permit the requesting party to inspect and test tangible things in the responding party's custody. Fed. R. Civ. P. 34. It is undisputed that the defendants are entitled to inspect and test the tires and rims at issue in this litigation.

Plaintiffs' counsel argues the tires and rims, owned by the plaintiffs, must stay within the control and custody of plaintiffs' counsel at all times, and that all such testing should be performed in the office of plaintiffs' counsel. In contrast, the defendants propose to ship the tires and rims to defendants' retained consultant, who has agreed to maintain the chain of custody at all times, and to document the condition of the tires and rims upon receipt and upon return to plaintiffs' counsel. The evidence of record establishes that special equipment is needed to test and inspect the tires, and it is both unfeasible and unduly expensive to perform the appropriate testing and inspection at a law office in Kansas City. The court will not require defendants' experts to perform their inspection and testing of the tires and rims in the law office of plaintiffs' counsel.

Irrespective of where the defense experts perform their work, plaintiffs' counsel claim they are entitled to be present and record all testing performed on the tires and rims to document how the tests were performed and make sure the tires and rims are not altered or destroyed. The plaintiffs claim they own the tires and rims and

-8-

are entitled to maintain control over this critical evidence.  The plaintiffs' complaint alleges the accident was caused by a tire defect existing since the time of manufacture.  Packer Engineering did not reach this conclusion.  Therefore, prior to filing their complaint, the plaintiffs must have retained their own experts to inspect and test the tires and rims.  Plaintiffs' experts performed their work outside the presence of defendants' counsel or their experts.  The plaintiffs have submitted no evidence to justify requiring defendants' experts to obtain plaintiffs' prior approval of any contemplated nondestructive testing and to perform such testing under plaintiffs' direct supervision and recording, while plaintiffs' experts were not subject to such scrutiny.  The plaintiffs may own the tires and rims at issue, but upon filing this lawsuit, the tires and rims became pivotal evidence upon which all parties are equally entitled to perform testing and inspection.

The testing and inspection proposed by the defendants is nondestructive, and based on the affidavit of defendants' retained consultant, the condition of the tires and rims will not be changed.   The defendants claim if plaintiffs' counsel are  present, defense counsel will also need to be present, resulting in unnecessary expenses for inspection and testing of the tires and rims.  More importantly, defense counsel argues the presence of plaintiffs' counsel during the examinations by defendants' experts violates the work product doctrine.  The court agrees.

Similar issues were addressed in Shoemaker v. General Motors Corp., 154 F.R.D. 235, 236 (W.D.Mo. 1994).  In Shoemaker, the plaintiffs claimed they were entitled to be present during any litigation testing performed by defendant General Motors. The plaintiffs argued their attendance was necessary "to ensure the integrity of the test, its foundation and its results," and to ensure General Motors did not conduct numerous tests to achieve one positive result.   The court rejected the plaintiffs' argument on the basis of work product and attorney-client privilege. The court reasoned, "[t]he decision of what to test and how is essentially a working-out of the defendant's interpretation of facts and testing of its defenses. Those processes

-9-

involve either the attorney's mental processes or the opinions of consulting experts. Both are protected." Id. The court held that plaintiff's unsubstantiated fear that General Motors would perform faulty testing did not constitute "exceptional circumstances" justifying the disclosure of otherwise-protected work product.

Similarly, in Diepenhorst v. City of Battle Creek, 2006 WL 1851243, 1 (W.D.Mich. 2006), the court rejected the plaintiff's demand to have her counsel and experts present while her documents were examined by defense experts. The court explained:

> In general, each party should be free to engage in its own trial preparation unhampered by the intrusive supervision of the opposing party. In cases such as this, where purely nondestructive testing is proposed, the court generally allows the examiner to perform his or her work without being scrutinized by the opposing expert. . . . Certainly, the particular circumstances of a case may dictate a different result. For example, . . . when a party proposes destructive testing, or there is controversy concerning the nature of the test, it sometimes becomes necessary to force the experts to collaborate. In the absence of such circumstances, however, the balance of hardships usually tips in favor of allowing the examiner to work in peace.

Id.

Based on the foregoing analysis, and the assurances and parameters set forth in the affidavit of Joseph L. Grant, the court will grant the defendants' motion to compel. Plaintiffs' counsel will be required to ship the tires and rims to Mr. Grant for nondestructive testing and inspection by defendants' retained experts. The tires and rims will remain in the custody of Mr. Grant until they are shipped back to plaintiffs' counsel. The condition of the tires and rims will be documented and photographed upon receipt by Mr. Grant, and upon his return shipment of the tires and rims to plaintiffs' counsel. Plaintiffs' counsel and their experts are  not permitted to be

-10-

present during the testing and inspection of the tires and rims by defendants' experts, and are not allowed to record the work performed by defendants' experts. The condition of the tires and rims will not be altered, and no destructive testing will be performed by any of the parties, including the plaintiffs, without prior notice to all parties and either the parties' unanimous consent or the court's approval.

      B.    <u>Chain of Custody</u>.

        The defendants have requested the identity of "the persons known to have had custody of the tires in question and rims from August 17, 2006 to the current date." The plaintiffs' response identifies the driver of the vehicle that caused the accident, Randall Edson, the Nebraska State Patrol, Farm Bureau Mutual Insurance, and plaintiffs' counsel. As to any others who may have had custody, the plaintiffs claim the identity of their consulted experts is work product, and "[i]f and when that consultant(s) is identified as a retained expert in accordance with Fed.R.Civ.P. 26(a)(2) . . . his or her identity will be revealed to Defendants along with a report of his or her findings." Filing No. 78-3, at CM/ECF p. 19.

        Pursuant to Rule 26(b)(4), "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial," unless the expert was retained for the purpose of performing a medical examination, or the requesting party makes a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4). Rule 26(b)(4) affords work product protection to not only the facts known and opinions held by the non-testifying expert, but also the expert's identity. State Auto Ins. Companies v. Briley, 140 F.R.D. 394, 397 (E.D.Mo. 1992); Brown v. Ringstad, 142 F.R.D. 461, 464 (S.D. Iowa 1992); Kuster v. Harner, 109 F.R.D. 372, 374 (D. Minn. 1986).

-11-

Although the chain of custody may ultimately be drawn into question in this case, no one is currently arguing that the tires and rims in the custody of plaintiff's counsel are not the tires and rims from the Ford pickup that collided with the plaintiffs' vehicle.[1]   These tires and rims were investigated by the Nebraska State Patrol and Packer Engineering before they came into plaintiffs' possession, and presumably the photographs and documentation from these independent entities will assist the parties in determining whether the condition of the tires have been altered in any way since the time of the accident.  See e.g., Hoover v. Thompson, 787 F.2d 449, 450-51 (8th Cir. 1986) ("In chain-of-custody cases, the trial court is to consider the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of others tampering with it. . . . The trial court need only be satisfied that in reasonable probability the article has not been changed in any important respect."); United States v. Combs, 369 F3d 925, 938 (6th Cir. 2004)("Merely raising the possibility of tampering or misidentification is insufficient to render evidence inadmissible.").

If and when issues of authentication, alteration, or spoliation are raised for judicial determination, the court will re-examine whether "exceptional circumstances" justify ordering the plaintiffs to identify their non-testifying consulting experts who have had custody of the tires and rims.  However, at this stage of the litigation, and based on the evidence of record at this time, the court "fail[s] to see how knowledge of the identity of plaintiffs' retained non-testifying experts would be relevant in this matter. . . .  The identity of plaintiffs' non-testifying experts is without relevance to any issue in dispute between the parties, and would not, therefore, be discoverable

---

[1]The affidavit of Joseph L. Grant, defendants' retained expert, identifies the specific tire at issue as a "certain Kumho Venture AT tire, bearing DOT #lFTNW21FOIEB87943."  Filing No. 78-5, at CM/ECF p. 3.  The source of this information is unclear, but apparently the tire is specifically labeled with a DOT number and can thereby be identified as the tire involved in the accident.

even if permitted by Rule 26(b)(4)." Cox  v. Piper, Jaffray & Hopwood, Inc., 848 F.2d 842, 845-46 (8th Cir. 1988) (Beam, J.,dissenting in part).

The parties are advised, however, that should the chain of custody or possible alteration or tampering with the tires and rims become issues in this case, the court will re-examine the plaintiffs' work product objection upon a properly supported defense motion.

Accordingly,

IT IS ORDERED that the defendants' motion to compel, (filing no.76), is granted in part, and denied in part as follows:

1)   The defendants' motion to compel the production for inspection and testing of the tires and rims  which were mounted on the 2001 Ford F250 Super Duty pickup truck VIN# 1FTNW21F01EB87943 when it collided with the plaintiffs' vehicle on August 17, 2006, is granted subject to the following terms and conditions:

   a.   Plaintiffs shall produce the tires and rims for to defendants' expert, Joseph L. Grant, on or before August 14, 2009.  Unless the parties agree otherwise, the tires and rims shall be properly labeled and delivered to the United Parcel Service or Federal Express by the plaintiffs for shipment directly to Mr. Grant's laboratory at defendants' expense.

   b.   Defendants shall ensure that upon completion of any inspection and testing by defendants' experts, the tires and rims shall be properly labeled and delivered to the United Parcel Service or Federal Express by Mr. Grant for shipment directly to the law firm of plaintiffs' counsel at defendants' expense.

-13-

c.     The condition of the tires and rims will be documented and photographed upon receipt by Mr. Grant, and upon his return shipment of the tires and rims to plaintiffs' counsel.  At all times between receiving the tires and rims from, and returning the tires and rims to plaintiffs' counsel, the tires and rims shall remain in Mr. Grant's custody within his laboratory.

d.     Plaintiffs' counsel and their experts shall not be present during the testing and inspection of the tires and rims by defendants' experts, and will not record the work performed by defendants' experts.

e.     The condition of the tires and rims will not be altered, and no destructive testing will be performed by the plaintiffs, the defendants, or the parties' experts without prior notice to all parties and either the parties' unanimous consent or the court's approval.

f.     Absent order of the court upon good cause shown, the testing and inspection by defendants' experts shall be completed and the tires and rims shall be delivered for return shipment to plaintiffs' counsel within sixty (60) days after Mr. Grant's receipt of the tires and rims.

2.     The defendants' motion to compel a full and complete response to their interrogatory requesting the identity of the "persons known to have had custody of the tires in question and rims from August 17,2006 to the current date" is denied without prejudice to re-filing such a motion should the chain of custody or possible tampering or changes to the tires and rims become issues in this case.

Dated this 23rd Day of July, 2009.

BY THE COURT:

*Richard G. Kopf*

United States District Judge

-14-