IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARCIA K. HAJEK, Individually and as Personal Representative of the Estate of Alan E. Hajek, Deceased, | )<br>)<br>)<br>) | 4:08CV3157 |
| Plaintiff, | )<br>) | |
| v. | )<br>) | MEMORANDUM AND ORDER |
| KUMHO TIRE CO., Inc., a foreign corporation, and KUMHO TIRE U.S.A., Inc., a California corporation, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

    Plaintiff Marcia K. Hajek has filed a personal injury and wrongful death action on her own behalf, and a survival action of behalf of her deceased husband, Alan Hajek against Kumho Tire Co., Inc., and Kumho Tire U.S.A., ("Kumho"). Marcia Hajek's injuries and Alan Hajek's death arose from a vehicle collision which occurred on August 17, 2006, when a Ford F250 pickup crossed an interstate median and struck the Hajek's oncoming vehicle. The pickup was equipped with tires manufactured by Kumho. The plaintiffs allege that due to tread and belt separation of the pickup's front tire, the pickup driver lost control and was unable to avoid colliding with the Hajek vehicle. The plaintiffs allege the tire failure was caused by Kumho's improper design and/or manufacture of the tire. Filing No. 64.

    The tire which failed and caused the accident ("accident tire") was an LT 265/75R16 KL4l Kumho Venture AT tire (DOT #H2W8YD4A0405) manufactured by the defendant at its Kwangju plant in Korea during the fourth week of 2005. Filing No. 102-10 (Cottles affidavit), at CM/ECF p. 2, ¶ 5. Following the accident, the tire was examined by law enforcement, and then turned over to plaintiffs' counsel. Plaintiffs' retained expert(s) have forensically examined the tire.

The plaintiffs served voluminous written discovery on Kumho, to which Kumho responded with numerous objections, and 27 pages of responsive documents. The plaintiffs have now moved for an order which: 1) overrules or strikes all objections raised by Kumho; 2) compels Kumho to produce legible copies of all documents and information responsive to plaintiffs' First Request for Production of Documents and Things; and 3) allows plaintiffs' representatives to enter and inspect Kumho's manufacturing facilities. Filing No. 100.

1.    <u>The Discovery Served</u>.

The plaintiffs' document production requests can be described and categorized as follows:

As to the "accident tire," or "subject tire," the plaintiffs request Kumho to produce:

-- The green and cured subject tire specifications and mold drawings used in the design and manufacture (Request 3);

-- The type of equipment and machinery and the processes and procedures used or followed to manufacture the tire and its components, including Kumho's standard practices and procedures for each stage of the tire-building process from receipt and handling of raw materials to component manufacture to tire building to shipment of the tire from the plant (Request No. 21);

-- All documents that discuss, refer, relate or pertain to

- The test results for the materials used to produce the tire (Request No. 34);

- Standards used by Kumho to manufacture the tire (Request No. 37);

- The source, ingredients and specifications for the materials used to make the tire and its components, including the ingredients and formulas for the belt skim stock, all allowable variations in the formulas, any specific differences in those formulas among plants, and

        all revisions and proposed revisions to the formulas since the date of the tire's manufacture (Request No. 38);

- All patents (or a list of their patent numbers together with the name of the country in which the patent was issued) used in the design or construction of the subject tire, including any of its component parts (Request No. 44);

- The organizational charts, job descriptions and personnel lists for management and supervisory employees at the time of the tire's manufacture (Request No. 45);

- All Quality Assurance Manuals for the plant at which the subject tire was built in force at the time of the tire's manufacture (Request No. 46); and

- All ISO, QS9000 and TS quality standards to which the tire was produced (Request No. 59).

As to the "subject tire or any tire [Kumho] consider[s] substantially similar to the subject tire," the plaintiffs request Kumho to produce:

-- All documents that discuss, refer, relate or pertain to:

- Any impact testing Kumho performed or reviewed (Request Nos. 26 & 27); and

- Any crack initiation or propagation testing Kumho performed or reviewed (Request No. 28);

As to "related tires," defined as "all passenger and light truck tires you made, distributed, marketed or sold that were manufactured using the same or substantially the same steel belt skim stock rubber formula as the accident tire," (filing no. 102-2, at CM/ECF p. 3), the plaintiffs request Kumho to produce:

-- All documents that discuss, refer, relate or pertain to the green and finished tire specifications and formulas, blueprints and engineering drawings used to build all "related tires" (Request No. 5);

-- For the period 1990 through the present, all comments and documents containing any comments made by any tire engineer working on the design, manufacture, development or testing. (Request No.8);

-- Warranty adjustments, property damage claims, complaints and lawsuits received by Kumho (Request No.9); including those alleging:

- Tread separation (Request No. 11);

- Belt edge separation (Request No. 12);

- Spot wear on the tire tread resulting in underlying belt separation (Request No. 13);

-- Any attempts to compare or contrast warranty adjustments, property damage claims, complaints and lawsuits between and/or among Kumho's tire manufacturing plants, different tire lines, different tire sizes, and different adjustment conditions (Request No. 29);

-- All documents that discuss, refer, relate or pertain to any testing Kumho conducted or reviewed (Request No. 25); and

-- All daily, weekly, monthly and quarterly manufacturing scrap reports involving/including the quantity and reason for scrapping (Request No. 61).

As to "subject model tires," defined as "all Kumho Road Venture tires of the size 265/75R16 you made, distributed, marketed or sold," (filing no. 102-2, at CM/ECF p. 3), the plaintiffs request Kumho to produce:

-- All documents that discuss, refer, relate or pertain to the specification changes from the inception of the tires to present (Request No.6); and

-- All documents that discuss, refer, relate or pertain to any testing Kumho conducted or reviewed (Request No. 24).

-4-

As to the entire "Kumho Road Venture line of tires," the plaintiffs request Kumho to produce:

-- All documents that discuss, refer, relate or pertain to:

- The green and finished tire specifications and formulas, blueprints and engineering drawings used to build them, from the time of its inception through the present (Request No. 4);

- The specification changes from the inception of the line to present (Request No. 7);

- Warranty adjustments, property damage claims, complaints and lawsuits received from 1996 through the present (Request No. 10);

- Pre-adoption and post-adoption testing Kumho conducted, including but not limited to ATE testing, Fleet testing, and all testing or failure analysis used to validate, certify, reject or otherwise assess any design, design modification, or design alternative (Request No. 23);.

- The percentages of the innerliner that were halobutyl, clorobutyl, or other butyl rubber for tires made between 1996 and the present (Request No. 31);

- The name, designation, size and any other identification characteristic of every tire that shares, or has shared, a common green tire standard with any size of the Kumho Road Venture tire family (Request No. 39);

- Any design changes Kumho made at any time to address, mitigate, prevent or reduce tread separations caused by road impact (Request Nos. 57 & 58);

-- Documents sufficient to identify the amounts of antioxidants, if any, used in the tire belt of tires made between 1996 and 2006 (Request No. 32);

-- All promotional materials, including advertising proofs, print ads, radio ads, sales brochures, and television advertisements as well as advertisements in commercial publications or trade journals (Request No. 41);

-- All written instructional, usage, warranty, advertising and directional material that was intended to be provided to the consumer (Request No. 43); and

-- All documents generated by any person, committee, task force or team, including minutes of any meeting where discussions were held, which discuss, reflect, pertain or relate to the design or development of the Kumho Road Venture line of tires (Request No. 48).

Regarding warranty adjustments, the plaintiffs request Kumho to produce:

-- All documents that discuss, refer, relate or pertain to information Kumho created and/or disseminated

- To guide its employees in evaluating warranty adjustments and property damage claims made by purchasers of Kumho tires in the United States and/or Canada (Request No. 14);

- To guide dealers of Kumho tires in evaluating warranty adjustments and property damage claims made by purchasers of Kumho tires in the United States and/or Canada (Request No. 15);

- Regarding warranty adjustments Kumho has made or received for impact damage to a tire, or for underinflating or overinflating a tire (Request No. 51, 52, 55 & 56); and

-- All tires Kumho has received as part of any warranty adjustment or claim that Kumho contends was related to impact damage, overinflation or underinflation (Request Nos. 53 & 54).

Regarding other lawsuits, the plaintiffs request Kumho to produce:

-- All Complaints and Petitions from lawsuits for the past ten years, and a list of all lawsuits, (including the caption and plaintiff's attorney's names and addresses) for the past twenty years, which alleged tread separation of steel belted radial tires and were filed against Kumho in the United States and Canada (Request Nos. 18 & 19);

-- As to all litigation against Kumho alleging tread separation of steel belted radial tires, all tire expert reports and witness and exhibit lists produced to Kumho's opponent (Request No. 20); and

-- Copies of all depositions given by Kumho employees and tire experts in any case alleging tread separation (Request No. 42).

Regarding manufacturing processes, the plaintiffs request Kumho to:

-- Produce all written manufacturing standard practices giving directions to employees on the proper procedures for each stage of the manufacturing process for the manufacturing of all tires at the plant at which the accident tire was manufactured (Request No. 22);

-- Produce all documents used to instruct or guide Kumho employees participating in materials receiving, raw materials testing, mixing, tire building, quality control, warehousing and shipping departments or divisions, regarding the acceptance, repair and rejection of steel belted radial tires and their components (Request No. 33); and

-- Make available for inspection the manufacturing facility at which the subject tire was manufactured (Request No. 49).

Regarding tread separation, the plaintiffs request Kumho to produce:

-- Documents showing any attempts to demonstrate, show, evaluate or analyze design and manufacturing causes of tread separations in any of Kumho's steel belted radial tires, as well as documents discussing methods considered to reduce tread separations (Request No. 40); and

-- All published documents in Kumho's possession, custody or control that discuss, refer, relate or pertain to tread separation (Request No. 50).

Regarding the use of nylon or rubber caps, the plaintiffs request Kumho to produce:

-- All documents that discuss, refer, relate or pertain to:

- The increased costs of incorporating full and partial nylon (or rubber) caps and/or strips in steel belted radial passenger and light truck tires, including any analysis of additional potential business benefits, profits and revenues (Request No. 35); and

> • Any testing or evaluation of the effectiveness, or lack thereof, of full and partial nylon (or rubber) caps, and strips, in preventing or reducing the occurrence or propagation of tread separations (Request No. 36).

Regarding evaluating competitors, the plaintiffs request Kumho to produce:

-- All documents that discuss, refer, relate or pertain to any technical benchmarking or evaluation of competitor light truck tires, including the accident tire size and type performed, produced or evaluated by Kumho (Request No. 60).

In addition, the plaintiffs request Kumho to produce an English translation of all documents produced in response plaintiffs' document requests, (Request No. 16); and copies of Kumho's document retention policies, guidelines, or manuals, (Request No. 17).[1]

Although many were raised, Kumho has two primary objections to the plaintiffs' discovery. Kumho claims the document production requests are overbroad, unduly burdensome, and harassing in that they seek discovery regarding tires other than the accident tire or tires which can be considered similar to the accident tire for the purpose of this litigation, and they seek such information for extensive periods of time. Kumho further claims that, as to all of Kumho's tires (including the accident tire and those identical to it), plaintiffs' discovery of formulas, designs, and manufacturing methods, and their entry into the Kumho plant itself, would reveal Kumho's trade secrets, and the plaintiffs have not shown any need for this information.

---

[1]There does not appear to be a dispute over Requests 1, 2, 3, 30, and 47.

ANALYSIS

The Federal Rules of Civil Procedure allow the court to limit the frequency or extent of discovery when the discovery sought is unreasonably cumulative or duplicative or the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Crawford-El v. Britton, 523 U.S. 574, 599 (1998). The fact that a plaintiff's complaint alleges an expansive theory of liability does not necessarily justify expansive discovery. Discovery must be relevant to the plaintiff's actual claims or defenses. In re Cooper Tire & Rubber Co., 568 F.3d 1180, 1193 (10th Cir. 2009).

      1.      Breadth of the Plaintiffs' Discovery Requests.

To the extent Kumho produced documents, it limited its response to documents concerning the tire, or tires exactly like the tire, involved in the accident. Subject to that limitation and, as to most of the documents, the confidentiality terms of a protective order, Kumho produced manufacturing specifications; a monthly production chart; the design drawing; the cured tire tolerances; the mold/tread pattern drawing; a warranty adjustment report; warranty adjustment data; a plunger test report; an adhesion test report; a tire endurance test report; the tire warning label; a tire patent; an ISO/TS16949:2002 certificate of registration; and a monthly and quarterly scrap report. Filing No. 102-4.

As to documentation for tires other than the accident tire and tires exactly like it, Kumho objected to plaintiffs' requests as overbroad, explaining:

> Only tires that are made from the same "green tire" specification have the same size, weight bearing capacity, belt size, and components as the subject tire. Only tires with the same tread design have the same traction and operational characteristics. Any tire would differ in some aspect that could or would have a significant impact on how the tire is constructed or operates. Tires that have different wheel or rim sizes differ significantly in their design, components and operation. Moreover, even two tires having the same wheel or rim size may have different weight-bearing capabilities, speed ratings and uses. Even if one were to find two tires with the same wheel or rim size from the same product line, they would not necessarily be the same because the tires could differ in many aspects including overall diameter, section width, tread width, tread depth, tire weight and load-carrying capacity. Thus, the green tire specification for a LT 265/75RI6 KL41 Kumho Venture AT tire in a size different from the tire at issue in this case will differ with respect to the width and weight of the steel belt package and tread, tire section width, overall diameter and mold dimensions. Finally, each green tire specification has its own unique curing specifications. Thus, unless two tires are made from the same green tire specification, there will be differences in the tire that make them mechanically different.

Filing No. 102-3, at CM/ECF p. 4.

According to plaintiffs' expert, limiting the response to tires with specifications identical to the accident tire is unwarranted because, for the purposes of this litigation, tires of different green tire specifications, or sizes, or load carrying capacity (or even passenger versus light truck tires) are similar to the accident tire. Filing No. 102-10 (Cottles affidavit), at CM/ECF p. 4, ¶ 22. Plaintiffs' expert states a tire should be able to withstand normal and often abusive wear until the tire wears out, which is defined as when the tire's tread surface meets the wear indicators (2/32nds of an inch) in two or more adjacent locations, and the tire should not separate or fall apart before it is, by definition, "worn out." Filing No. 102-10 (Cottles affidavit), at CM/ECF p. 2, ¶ 3. Plaintiffs' expert states the accident tire failed due to a belt/belt detachment which began as a belt edge separation and then spread or grew into a larger tread belt detachment. In other words, plaintiffs' expert claims the accident tire was defective due to tread separation.

Plaintiffs' expert claims tread separation of the type exhibited by the accident tire is due, in part, to accelerated deterioration of the physical properties of the tire's internal compounds. He explains this deterioration may be accelerated by poor formulae, poor design specifications, or poor execution in manufacturing and formulation, including the use of poor quality raw materials and unclean or improper factory conditions, which may, in turn, allow for contaminants to infiltrate the materials. Filing No. 102-10 (Cottles affidavit), at CM/ECF p. 3, ¶ 13. Plaintiffs' expert therefore claims a study of the efficacy of the belt skim coat compound in any green tire specification that used that compound would have universal application to all tires that used that compound, (filing no. 102-10 (Cottles affidavit), at CM/ECF p. 3, ¶ 17), as evidenced by the fact that tire companies which develop or modify a belt skim stock conduct their tests on one size and type of tire and then apply the changes across the board, (filing no. 102-10 (Cottles affidavit), at CM/ECF p. 4, ¶ 18); tire companies do not typically subject each size tire within the line to developmental testing, but rather test the smallest size, the largest size and the most popular size and extrapolate from those tests the expected tire performance for each tire size within the line, (filing no. 102-10 (Cottles affidavit), at CM/ECF p. 4, ¶ 19); and no aftermarket tire manufacturers study tire problems with reference to green tire specifications, but instead focus on tires that share common design characteristics and materials. Filing No. 102-10 (Cottles affidavit), at CM/ECF p. 4, ¶ 24. Plaintiffs' expert therefore claims obtaining information about other tires which have exhibited tread separation and share any common design feature or component with the accident tire, including all tires made using the same or substantially the same skim stock rubber,[2] are relevant for assessing the existence of a design or manufacturing defect in the accident tire. Filing No. 102-10 (Cottles affidavit), at CM/ECF p. 5, ¶ ¶ 10, 28.

---

[2]Skim stock rubber is the rubber mixture which coats and must adhere to the tire's brass plated steel cords to prevent belt separation. Filing No. 102-10 (Cottles affidavit), at CM/ECF p. 5, ¶ ¶ 10, 28.

The defendant disagrees. The defendant argues tread separation an effect of a tire defect, not the defect itself. The defendant has submitted the affidavit of its expert witness, along with book chapters, articles, and industry papers explaining there are many causes of tread separation other than a defect in the design and manufacture of a tire. Filing No. 105. Kumho argues that despite plaintiffs' control over and expert investigation of the accident tire, the plaintiffs have not yet identified any likely cause of the alleged tread separation or what component of the accident tire was defectively designed or manufactured, and therefore there is no component or manufacturing process identified that can be used to decide which tires are potentially similar for the purpose of this litigation. Kumho argues that accumulating all information about all types of tires that may have one component in common with the accident tire, and using this information to then decide which component of the tire allegedly failed resulting in tread separation, is a "fishing expedition." The court agrees.

Upon careful review of the plaintiffs' evidence, including the affidavit of their expert, there is no evidence (by affidavit testimony or otherwise) actually identifying the likely cause of the alleged tread separation in the accident tire. There are many recognized causes for tread separation. In addition to design and manufacturing defects, poor tire maintenance and motorist negligence can cause sudden tire failure and tread separation. 4 Pattern Discovery Products Liability (3d) § 36:22. See also, id. at §§ 36:7 (improper inflation pressure); 36:9 (overloading and underinflating); 36:12 (improper mounting); § 36:14 (excessive speed); & § 36.30 (listing sixteen causes of sudden tire failure); Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 154 (1999)(affirming exclusion of testimony by the plaintiff's expert where tire marks found during the expert's visual and tactile inspection of the tire indicated overdeflection, not an inherent defect, caused the tire separation); Henry v. Bridgestone/Firestone Inc., 63 Fed. Appx. 953, 958, 2003 WL 2013051, 4 (7th Cir. 2003)(excluding expert causation testimony where the expert did not assert tire failure was

probably caused by a defect in the tire design and manufacture rather than other common causes of tread separation).

The plaintiffs' definition of "related tires" includes all tires manufactured with the same skim stock rubber as the accident tire, but there is nothing before the court indicating the accident tire failed due to a defect in its rubber or the rubber's adhesion to the tire's steel belts. There is also nothing indicating a common component of all "Kumho Road Venture line of tires" caused the accident tire to fail. For example, there is nothing indicating that the engineering specifications for the accident tire, the percentage of halobutyl, clorobutyl, or other butyl rubber used in its innerliner, the amount of antioxidants in its tire belt, or the lack or insufficiency of nylon (or rubber) caps and/or strips caused the alleged tread separation in the accident tire. There is nothing indicating the alleged tread separation was caused by road impact; crack initiation or propagation; any failure by Kumho to design, re-design, or test its tires; any failure of its Quality Assurance standards; or any employee or managerial performance issue.

There is no showing all tires manufactured with the same or similar skim stock rubber as the accident tire, all "Kumho Road Venture line of tires," all such tires of the same size as the accident tire, or all Kumho tires for which a warranty adjustment was made or a lawsuit initiated alleging tread separation, are sufficiently similar to the accident tire for the purposes of obtaining information relevant to plaintiffs' litigation. For similar reasons, the following categories of document requests are also overbroad:

-- Documents evaluating or analyzing design and manufacturing causes of tread separations for any Kumho steel belted radial tire, (Request Nos. 40); and

-- All documents in Kumho's possession, custody or control that discuss, refer, relate or pertain to tread separation (Request No. 50).

There is also nothing indicating the extensive time periods of many of plaintiffs' requests, some dating back to when Kumho began manufacturing tires, bear any relationship to the relevant time periods for the issues raised in this case.

Accordingly, Kumho's objections to Request Nos. 4-15, 18-20, 23-29, 31-32, 35-36, 39, 40- 46, 48, 50-59 as overbroad will be sustained. Collecting volumes of information regarding all Kumho tires, without any threshold evidentiary showing of how those tires are similar to the accident tire for the purposes of this litigation, or that the information requested has any relationship to the underlying cause of the alleged tread separation at issue, is unduly burdensome and not likely to lead to the discovery of relevant information. See e.g., Murphy v. Cooper Tire & Rubber Co., 2008 WL 5273548, 5 (N.D. Fla. 2008) (limiting the plaintiffs' discovery requests as to both tire model and time where the plaintiffs did not show any other tire manufactured by the defendant was substantially similar to GTS 5245 or that a wider time frame for production is reasonable; "[T]he burden or expense of Cooper complying with Plaintiffs' requests for information related to all light truck tires manufactured at the Findlay, Ohio plant for a seventeen-year period outweighs its likely benefit."). See also, Bradley v. Cooper Tire & Rubber Co., 2006 WL 3360926, 1 (S.D. Miss. 2006).

The plaintiffs retained an expert to investigate the accident tire, the tire was in the plaintiffs' control and possession prior to initiating this litigation, and the plaintiffs filed a lawsuit alleging the tire failed due to a defective design or improper manufacturing practices. The allegations of the complaint itself presuppose the plaintiffs have evidence supporting their claims, but that evidence has not been submitted to the court in support of their motion to compel. In addition, as set forth in the letter from defense counsel:

> KTCI has already provided the plaintiff with the design drawing and specifications for the subject tire, manufacturing specifications for the subject tire, and documents and information regarding the history of the design and

>manufacture of the subject tire, accompanied by production numbers. KTCI has provided the plaintiff with documents and information that show the quality control standards and testing that the subject tire underwent. Essentially, KTCI has provided all the documents and information regarding the subject tire that was involved in this lawsuit, which is the information the plaintiff needs to continue her case.

Filing No. 102-8, at CM/ECF p. 3. To the extent the plaintiffs needed further information to ascertain the source of any design and manufacturing defects that caused tread separation in the accident tire, the written discovery already served by the defendant should have illuminated or at least narrowed that issue. The plaintiffs' discovery requests must be narrowed accordingly.

2.     Trade Secrets.

As to all tires, Kumho objects to producing details regarding its manufacturing processes and the designs and formulas for its tire components, and it objects to providing access to its plant. As to these requests, Kumho claims the plaintiffs are requesting closely guarded trade secrets of defendant's business without proving a threshold need for this information.

To withhold information under a claim that the requested discovery is "confidential" or a trade secret, Kumho must demonstrate the confidential and proprietary nature of the discovery and the need for non-disclosure. Confidential business information is property, (Carpenter v. United States, 484 U.S. 19, 26 (1987)), but the extent of the property right and the entitlement to withhold it from discovery depends on whether the business has attempted to keep it secret. Public disclosure of business information or trade secrets extinguishes the property right. Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002 (1984).

A party claiming the discovery requested is a trade secret has the threshold burden of demonstrating the information is a "trade secret or other confidential research, development, or commercial information," and its disclosure would be harmful to the party's interest in the property. Fed. R. Civ. P. 26(c)(7). Once this burden is met, the party seeking discovery must show the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial. In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir. 1991).

Under Nebraska law, information "which if released would give advantage to business competitors and serve no public purpose" is confidential and not the proper subject of discovery. Burlington Northern R. Co. v. Omaha Public Power Dist., 703 F.Supp. 826, 831 (D. Neb. 1988). A trade secret (1) may consist of a "formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it;" (2) must be "for continuous use in the operation of the business;" (3) may "relate to the sale of goods or to other operations in the business, such as a code for determining discounts, rebates, or other concessions in a price list or catalog, or a list of specialized customers, or a method of bookkeeping or other office management;" and (4) must be secret and not generally known to the public or the industry. Id. (citing Restatement of Torts, § 757, comment b.).

> An exact definition of a trade secret is not possible. Some factors to be considered in determining whether given information is one's trade secret are: (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

Application of Northwestern Bell Telephone Co., Omaha, 223 Neb. 415, 421, 390 N.W.2d 495, 499 (1986).

Kumho has submitted substantial evidence explaining that "the manufacturing equipment, processes, method and sequence of manufacturing, and the way in which the manufacturing equipment is oriented in the Kwangju plant, embody customized tire designs and manufacturing processes," the "formulas, machinery, and processes used in the Kwangju plant are state of the art," and Kumho "does not share its formulas, technology or processes with competitors." Filing No. 105-1, at CM/ECF p. 2, ¶ 6. The evidence indicates Kumho has invested substantial resources in developing its technology and formulas for manufacturing tires; makes substantial efforts to keep its manufacturing and design methods confidential; competitors cannot obtain this information by inspecting a finished tire without expending significant time and resources; and in the competitive environment of tire manufacture, any release of tire design specifications, formulas, manufacturing standards and techniques, and comparative studies and testing would be very harmful to Kumho's business. Filing No. 105-1. Kumho has met the burden of showing the information (and/or access) requested in Request Nos. 4, 5, 7, 8, 21-23, 31-34, 37-38, 48-49, 60 includes confidential trade secrets.

For the reasons previously discussed in finding the plaintiffs' requests are overbroad, the plaintiffs have failed to meet their burden of showing the requested trade secret information is necessary. Tread separation is not, in and of itself, a design or manufacturing defect. Until the plaintiffs identify or at least narrow the scope of their allegations concerning the design or manufacturing defect which allegedly caused the accident tire's tread to separate, the court cannot determine how or if the requested trade secret information could assist in proving the plaintiffs' claims or rebutting Kumho's defenses. In addition, as to plaintiffs' request to tour or inspect Kumho's manufacturing plant, the plant has changed since the accident tire was manufactured in 2005. There is no showing that touring and assessing the plant's current structure, mechanisms, ventilation, or general cleanliness would

be relevant or lead to discovering information relevant in determining why a tire manufactured in 2005 failed on August 17, 2006.

Subject to a protective order of confidentiality, Kumho has produced some trade secret information for the accident tire and tires identical to it.  Kumho has not, however, produced the formula for the skim stock rubber.  The evidence before the court establishes that such formulas are closely guarded by Kumho and its industry competitors.  The plaintiffs have made no showing that the accident tire failed because of a defect, weakness, or lack of adherence of the skim stock rubber, or that learning the formula for the skim stock rubber will assist in proving the rubber was defective and a cause of the plaintiffs' accident. Accordingly, plaintiffs' request for Kumho's skim stock rubber formula, even as to the accident tire, will be denied. Bridgestone Americas Holding, Inc. v. Mayberry, 878 N.E.2d 189, 196 (Ind. 2007) (holding plaintiffs who proved the skim stock formula was relevant, but failed to show how the formula itself was necessary for their case, were not entitled to discover the formula); Crum v. Bridgestone/Firestone North American Tire, LLC, 907 A.2d 578, 588 (Pa. Super. 2006)(reversing the trial court and finding a tire manufacturer's trade secret rubber compound formulas were not subject to discovery because the formulas themselves do not indicate whether a tire was defectively manufactured; knowledge of the formulas does not aid in a determining the physical properties a tire after the rubber has been cured or vulcanized).  See also, In re Continental Gen. Tire, 979 S.W.2d 609 (Tex.1998); In re Bridgestone/Firestone, Inc., 106 S.W.3d 730, 733 (Tex.2003); Bridgestone/Firestone, Inc. v. Superior Court, 7 Cal. App. 4th 1384, 9 Cal. Rptr. 2d 709 (1st Dist. 1992).

The plaintiffs have requested Kumho to produce an English translation of its documents written in Korean.  If Kumho has English translations of such documents, it must produce them   However, if an English version does not currently exist, Kumho is not required to create one for the plaintiffs' lawsuit.  Kumho has proposed sharing the cost of translating the documents.  This proposal is certainly reasonable, and if only one translated

set is created, may serve to avoid later confusion should the parties' separate translations not be entirely identical. Filing No. 102-8, at CM/ECF p. 3.

The plaintiffs have requested Kumho's document and tire retention policies and procedures. There is nothing of record indicating that Kumho has destroyed any information to which the plaintiffs may be entitled. If that occurs, Kumho will be required to respond to Request No. 17. As of now, there is no showing that the Request is relevant or could lead to the discovery of relevant information.

Accordingly,

IT IS ORDERED:

1) To the extent it has not done so already, Kumho must produce legible copies of the documents previously disclosed in response to plaintiffs' discovery.

2) In all other respects, plaintiffs' motion to compel, (filing no. 100), is denied.

Dated this 8th day of February, 2010.

BY THE COURT:

s/ *Cheryl R. Zwart*
United States Magistrate Judge