IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARCIA K. HAJEK, Individually and as Personal Representative of the Estate of Alan E. Hajek, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | 4:08CV3157 |
| v. | ) ) | |
| KUMHO TIRE CO., Inc., a foreign corporation, and KUMHO TIRE U.S.A., Inc., a California corporation, | ) ) ) ) | MEMORANDUM AND ORDER |
| Defendants. | ) | |

  The plaintiffs' complaint seeks damages caused by the allegedly defective design and manufacture of a Kumho KL41 tire. Pending before me is plaintiffs' motion to compel production of the following documents related to the manufacture and specifications of Kumho's KL78 tire:

  13. The Tire Analysis Component List and Manufacturing Tire Specification documents for the Kurnho Road Venture 265175R16 with Tread Pattern KL78 from which Dr. Han indicated during his deposition that one would be able to determine the exact level of similarity between the above described tire and the subject tire.

  14. The Tire Mold and Pattern Drawing for the Kumho Road Venture LT 265175R16 with the pattern KL78.

  15. The "Work Order" for the 265175R16 Kumho Road Venture AT currently being produced using the KL 78 tread.

Filing No. 171; 173-1, pp. 2-3.

  Kumho objects to production because "the KL78 tire is different from the subject KL41 tire and, therefore, beyond the scope of Court Ordered discovery in this case." Filing No. 173-2, pp. 6-7. Under the analysis and holding of the court's prior discovery order, the documents at issue on this motion to compel are trade secrets. Filing No. 117, pp. 16-17. Therefore, discovery

will not be permitted unless the plaintiffs shows the information requested is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial.  In re Remington Arms Co., Inc., 952 F.2d 1029, 1032 (8th Cir. 1991).

The plaintiff claims the KL78 tire manufactured by Kumho is the replacement tire for the KL41 tire, and therefore Kumho should be compelled to produce its trade secret information regarding the manufacture and design of the Kumho KL78.  A company's "subsequent remedial measures" may be discoverable even if not admissible at trial, (see, Jumper v. Yellow Corp., 176 F.R.D. 282, 284 (N.D.Ill.1997)(collecting cases)).  However, based on the evidence of record, the KL41 was taken off the market due to low sales, and the KL78 replaced it.  Filing No. 177-1 (Cho affidavit), p. 2, ¶ 10.   There is no evidence the KL78 was designed and manufactured to remedy any problems identified with the KL41.

Generally, discovery regarding different models of a product will be relevant "if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation."  Hofer v. Mack Trucks, Inc.,  981 F.2d 377, 381 (8th Cir. 1992).  The underlying design and manufacture issues raised by the plaintiff in this case are summarized in the report of the plaintiffs' expert.  After inspecting the accident tire, plaintiffs' expert concluded the tire exhibited inadequate bonding between belts as evidenced by trapped air impressions and liner pattern marks on the separated surfaces; premature oxidation of the belt skims; and belt irregularities, all of which were manufacturing defects which contributed to catastrophic tread separation.    Filing No. 186-1, p. 46.  The plaintiff's expert concluded "there were safer, alternative designs and manufacturing processes and know-how available to Kumho at the time the subject tire was produced," including:

- Better consolidation of components to remove trapped air; "Bonding of laminated materials cannot exist properly in areas separated by trapped air."

- Proper application of material shelf life standards; "When green tire stock sits in the liner roll for a long enough duration, it both takes on the surface impressions

       of the liner and begins to dry out," which interferes with the contact and adhesion between tire's components.

- Lack of antioxidants in the skim stock rubber, leading to oxidation and loss of rubber elasticity, and the inability of the rubber to flex with the steel belts as they rotate, and culminating in separation of the belts from the rubber.

- Better placement of belt materials; "The belts show evidence of irregular wire spacing, heavy gaps, and spread cables, dog-eared splices, and snaking," which contributes to heat generation and increased stress and strain along and surrounding the areas of splicing.

Filing No. 186-1, pp. 38-47.

      There is no showing the characteristics of the KL41 tire, as identified above, exist in the KL78 tire. The record reveals the KL41 and the KL78 have the same tread pattern, and therefore the same Product Completion Report. Filing No. 177-1 (Cho affidavit), p. 2, ¶ 11. In other words, to someone who knows little or nothing about the internal design and interrelationship of components within a tire, they look like the same tire. See Filing No. 177-1, (Cho Affidavit), p. 2, ¶ 5. But looking similar is not being similar, and the similarity shared by the KL41 and the KL78–tread pattern–was not identified by the plaintiffs' expert as a cause of plaintiffs' accident.

      The plaintiffs' expert also concluded the accident tire was defectively designed because given the tire's previously described manufacturing defects and load range, a full nylon cap ply was warranted. The expert explains a full nylon cap increases plunger strength in rough terrain, improves durability in standard operation and high speed performance, provides a barrier to migration, hinders movement within the underlying belts and, had it been used, would have limited the risks posed by the tire's manufacturing defects. Filing No. 186-1, pp. 44-45. The expert states the combination of the manufacturing and design defects "caused or contributed to cause the subject tire to suffer a catastrophic tread separation immediately prior to the vehicle's departure from the road surface and led to a loss of control of the vehicle." Filing No. 186-1, p. 46. Based on this opinion, the plaintiffs claim they are entitled to information regarding the

4:08-cv-03157-RGK-CRZ Doc # 194 Filed: 01/05/11 Page 4 of 5 - Page ID # 1440

KL78 tire because "it incorporates the very design feature that Plaintiff contends should have been present on the subject tire (a full nylon ply)." Filing No. 173-3, p. 1.

Kumho does not dispute that a full nylon ply was a feasible component to incorporate in tires when the KL41 was designed and manufactured. Rather, it argues the type of nylon ply used depends on a tire's overall design, and a full nylon ply was appropriate for the KL78 design, but not for the KL41 design. In other words, it claims the KL41 and KL78 tires are not substantially the same, and therefore the trade secret discovery requested regarding the KL78 is irrelevant and will not lead to the discovery of relevant information.

Certain components of tires are "nearly universally used," including "innerliners, bead wire and skim, ply cord types, ply skim stocks, chafer fabric and skim stocks, belt wire, belt cushion, belt wedges, belt skim stocks, undertread compounds, tread base compounds, rim protector compounds, nylon cap ply fabric and nylon skim stocks." Filing No. 186-1 (Cottles report), p. 14. Therefore, showing the KL41 and the KL78 both have these common components, (see filing no. 173-5, (Han deposition), at CM/ECF pp. 5-7), does little to prove the models are similar. Rather, the level of similarity of tire models is dependent on the composition and specifications of the tire components themselves and how they are integrated into a single product–a tire. Filing No. 173-5, (Han deposition), at CM/ECF pp. 5-7; 186-1 (Cottles report), pp. 10-14. For that reason, during product development, the tire company may make design changes to adjust to the components used and product standards chosen, and may integrate different components into test products for side-by-side comparisons of actual performance. Filing Nos. 177-3, at CM/ECF pp. 7-12; 177-1 (Cho affidavit), p. 2, ¶ 8.

The plaintiffs' expert acknowledges that full nylon cap plies may not be required to ensure durability in a properly manufactured and designed tire. Filing No. 186-1 (Cottles report), p. 41. Therefore, the fact that the KL78 tire has a full nylon cap while the KL41 does not cannot, in and of itself, show the information regarding the KL78 use of a full nylon cap is relevant to prove the KL41 is defective.

-4-

Although the plaintiffs claim the KL78 replaced the KL41, they have failed to show the KL78 is a full nylon cap version of the KL41.  There is no showing that, with the exception of the full nylon ply, the internal design specifications or the component parts comprising the KL78 were the same or substantially similar to those of the KL41. As stated by Nam-Woog Cho, "KL41 and KL78 they are both different tires from each other, they have both their own individual design plans."  Filing No. 177-3, at CM/ECF p. 12.

Accordingly, based on the law and analysis set forth in the court's previous memorandum and order, (filing no. 117), the court finds the plaintiffs have failed to meet their burden for discovery of Kumho's trade secret information regarding the KL78 tire.


IT IS ORDERED:

1) The parties' motions to seal, filing nos. 174, 175, 185, are granted, and the following shall be filed as restricted access documents:

   Filing No. 173, Exhibits 2, 5, 6, and 7;
   Filing No. 176 and 177; and
   Filing No. 186.

2) The plaintiff's motion to compel, (filing no. 171), is denied.


January 5, 2011.                    BY THE COURT:

                                    *s/ Cheryl R. Zwart*
                                    United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.